1  BENJAMIN B. WAGNER
   United States Attorney
2  RUSSELL L. CARLBERG
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2748



FILED
OCT 19 2010
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,         )   CR. NO. S-08-159 LKK
                                  )
              Plaintiff,          )   **PLEA AGREEMENT**
                                  )
     v.                           )
                                  )
                                  )
DAVID ANTHONY FABOO,              )
                                  )
              Defendant.          )
                                  )
_____)

## I.

## INTRODUCTION

**A. Scope of Agreement**: The indictment in this case charged the defendant with (1) interstate travel of a minor with the intent of engaging in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and (2), interstate communications to entice a minor to engage in an illegal sexual act, in violation of 18 U.S.C. § 2422(b). Both crimes carry a ten-year mandatory minimum sentence. Under this specific sentence plea agreement, the defendant will plead guilty to a one-count information, charging him with enticing interstate travel with intent to engage in an illegal sexual act, in violation of 18 U.S.C. § 2422(a), which carries a twenty year maximum, but no

mandatory minimum sentence.  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B. Rule 11(c)(1)(C) Specific Sentence Agreement:**  The government and the defendant agree that **the specific sentence of 84 months in prison followed by a 15 year term of supervised release** is the appropriate disposition of this case.  Consequently, this Plea Agreement is being offered to the Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  Under the provisions of Rule 11(c)(3), the Court may accept or reject the Plea Agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.  If the Court accepts the Plea Agreement, the Court will inform the defendant that it will embody in the judgment and sentence the disposition provided for in this Plea Agreement.  If the Court rejects this Plea Agreement, the Court shall so advise the defendant, allow the defendant the opportunity to withdraw his plea, and advise him that if he persists in a guilty plea the disposition of the case may be less favorable to him than is contemplated by this Plea Agreement.  Likewise, if the Court rejects this Plea Agreement by imposing any sentence other than that called for in this Plea Agreement, the government shall be freed from all of its obligations under the Plea Agreement.  Among other things, the government may elect not to dismiss counts of the pending indictment and to proceed to trial on

those counts and to seek a higher sentence. In such event, the defendant and his attorney agree that they shall bring no motion or claim to dismiss prosecution of the indictment. For instance, the defendant and his attorney shall not advance any claim based on double jeopardy, the doctrine of merger, estoppel, vindictive prosecution, or violation of the Speedy Trial Act.

## II.

## DEFENDANT'S OBLIGATIONS

**A. Waiver of Indictment and Guilty Plea:** The defendant will waive indictment by grand jury, waive venue, and plead guilty to an Information, substantially in the form attached hereto as Exhibit B, charging him with enticing interstate travel with intent to engage in an illegal sexual act, in violation of 18 U.S.C. § 2422(a).

The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

**B. Restitution:** The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of his offense. Payment should be by cashier's or certified check made payable to the Clerk of the Court. Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**C. Fine:** The defendant agrees to pay a criminal fine if ordered by the Court.

**D. Special Assessment:** The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.

The defendant understands that this plea agreement is voidable by the government if he fails to pay the assessment prior to that hearing.

**E.    Sex Registration/DNA Testing**: Defendant understands that by pleading guilty, defendant will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. Moreover, the defendant understands and agrees that he shall register as a sex offender pursuant to his conviction.

The defendant further has been specifically advised and understands, that under the Sex Offender Registration and Notification Act (SORNA), the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

The defendant also understands and agrees that as a

consequence of his conviction he will be ordered to submit to the collection of his DNA.

    **F.   Impact of Plea on Defendant's Immigration Status**: Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequences is his automatic removal from the United States.

### III.

### THE GOVERNMENT'S OBLIGATIONS

    **A.   Dismissals**: Subject to the Court's acceptance of this Plea Agreement in its entirety, the government agrees to move, at the time of judgment and sentencing, to dismiss without prejudice the two counts of the indictment.  But if the Court rejects the Plea Agreement by sentencing the defendant below the specific sentence of 84 months in jail and 15 years of supervised release, the government shall be free to proceed to trial on the counts of the pending indictment.

    **B.   Acceptance of Responsibility**: If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government

5

will not oppose such a reduction and will so move under §3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

## IV.
## ELEMENTS OF THE OFFENSE

**A. Elements of the Offense:** At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, enticing interstate travel with intent to engage in an illegal sexual act:

First, that the defendant knowingly persuaded and enticed an individual to travel in interstate commerce, or attempted to do so;

Second, with the intent that the person engage in any sexual activity for which any person can be charged with a crime.

## V.
## MAXIMUM SENTENCE

**A. Maximum Penalty:** The maximum sentence that the court can impose on count one of the information is twenty years of incarceration, a fine of $250,000, a mandatory period of supervised release of a minimum of five years up to life, and a special assessment of $100.

**B. Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 5

additional years of imprisonment. If the defendant commits certain specified felonies against children delineated in 18 U.S.C. § 3583(k) while on supervised release, the court is required to revoke supervised release and impose any term of imprisonment not less than 5 years, to life.

## VI.

### SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220, 125 S.Ct. 738 (2005), Rita v. United States, 127 S.Ct. 2456 (2007), Gall v. United States, 128 S.Ct. 586 (2007), Kimbrough v. United States, 128 S.Ct. 558 (2007)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

   B.  **Stipulations Affecting Guidelines Calculation and Section 3553(a) Factors:**

   1.  **Applicable Offense for Guideline.** Under U.S.S.G. §1B1.2, when a Plea Agreement stipulates that the guideline to be applied is that of a more serious offense than the offense of conviction, then the stipulated guideline is applied. Accordingly, the defendant and the government stipulate that the offense of 18 U.S.C. § 2423(a) shall determine the applicable guideline.  Further, the government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

   2.  **Base Offense Level**: 28.  U.S.S.G. §2G1.3(a)(3).

   3.  **Specific Offense Characteristic**: +2. U.S.S.G §2G1.3(b)(3).

   4.  **Adjusted Offense Level Before Acceptance**: 30.

   5.  **Acceptance of Responsibility**: -3, subject to the requirements of Section III(B) of this Plea Agreement.

   6.  **Final Guideline Range (Assuming Acceptance)**: 27 (70-87 months, assuming criminal history category I).  The parties agree that **84 months in prison followed by 15 years of supervised release** is the appropriate disposition of this case.

   7.  **Criminal History**: The parties agree that the defendant's criminal history will be determined by the Probation Officer's score of the defendant's criminal history under Chapter Four of the United States Sentencing Guidelines.

C.  **Specific Sentence**: The grand jury charged the defendant with two crimes, each of which carry a ten-year mandatory minimum sentence, which would become the guideline sentence.  By allowing the

8

defendant to plead to a crime that does not carry the mandatory minimum, the defendant avoids application of the mandatory setence of 120 months.  The parties agree that the **specific sentence of 84 months in prison followed by a 15 year term of supervised release** is the appropriate disposition of this case.  The parties agree that such sentence is sufficient but not greater than necessary to comply with all the factors set forth in 18 U.S.C. § 3553(a)(2), including: the nature and circumstances of the offense; the history and characteristics of this defendant; the need for the sentence to provide both general and specific deterrence, to promote respect for the law, to protect the public, to avoid unwarranted sentencing disparities, and to provide the defendant with correctional treatment in the most effective manner.

In the event the defendant or his attorney make any argument to the United States Probation Office or to the Court inconsistent with the stipulations of this Plea Agreement, or for any other reduction of sentence, the defendant will have materially breached this Plea Agreement.  United States v. Salerno, 81 F.3d 1453, 1462 (9th Cir. 1996).  In the event of such material breach, the government may elect its remedies.  United States v. Cimino, 381 F.3d 124, 128 (2nd Cir. 2004); United States v. Sandoval-Lopez, 122 F.3d 797, 800 (9th Cir.1997) ("Where a defendant has breached a plea agreement, courts have found the government to be free from its obligations.").

### VII.

### WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights:

9

1. **Public and Speedy Trial**: If defendant were to continue with his plea of not guilty to the charges in the indictment, he would be entitled to a public and speedy trial.

2. **Jury Trial, Presumption of Innocence, Unanimous Verdict**: The defendant has an absolute right to a jury trial. At that trial, the jury would be instructed that the defendant is presumed innocent and that he carries that presumption throughout the trial until such time as the government overcomes the presumption by evidence adduced at the trial. The jury would be further instructed that it could not convict the defendant unless all twelve jurors agreed that the government had proved guilt beyond a reasonable doubt.

3. **Confrontation of Witnesses**: At the trial, the defendant would be entitled to see, hear and confront the witnesses and the evidence against him. These witnesses would be testifying under the penalty of perjury and would be subject to cross-examination by the defendant's attorney.

4. **Compulsory Process**: At the trial, the defendant would be entitled to present witnesses and other evidence in his own behalf and, if the witnesses refused to appear voluntarily, the defendant would be entitled to use the court's process to compel their attendance.

5. **Privilege Against Self Incrimination**: At a trial, the defendant would have a privilege against self-incrimination so that he could not be compelled to testify and the jury could be instructed that no inference of guilt could be drawn from the defendant's failure to testify.

///

6. **Right to Appeal**: If, after a trial, the defendant were convicted, he would have a right to appeal the conviction.

7. **Representation of Counsel**: The defendant is entitled to be represented by competent counsel through all stages of the case, including appeal, and if the defendant could not afford an attorney one would be appointed for him by the court.

Defendant understands that by pleading guilty he is waiving all of the rights set forth above. Defendant's attorney has explained those rights to him and the consequences of his waiver of those rights and the defendant freely and voluntarily consents to said waiver.

B. **Waiver of Appeal and Collateral Attack**: The defendant understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up the right to appeal his conviction. Defendant further gives up any right he has to appeal any aspect of the sentence imposed in this case (1) so long as he is sentenced to a prison term in accordance with this agreement or (2) if he persists in his plea should the Court reject the Plea Agreement. He further gives up his right to appeal any order of restitution the Court may impose. Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

If the defendant ever attempts to vacate his plea, dismiss the underlying charge, or reduce or set aside his sentence on the charge to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on the count to which he pleaded

guilty; and (2) to file any new charges that would otherwise be barred by this Plea Agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs**: The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

///
///
///

## IX.

## APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: Oct. 15, 2010

TIMOTHY ZINDEL
Attorney for Defendant

**B. Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: Oct. 15, 2010

DAVID ANTHONY FABOO,
Defendant

**C. Attorney for United States:** I accept and agree to this plea agreement on behalf of the government.

DATED: October 19, 2010

BENJAMIN B. WAGNER
United States Attorney

By: _____
RUSSELL L. CARLBERG
Assistant U.S. Attorney

**EXHIBIT "A"**
**Factual Basis for Plea**

In 2008, DAVID ANTHONY FABOO was 37 years old and living in a shared apartment in Oregon when he met a 16 year old girl (the Victim) through the on-line video game, World of Warcraft. The Victim lived in Wheatland, California, with her family, and attended high school. The Victim suffers from a social anxiety disorder.

From text message chats and access to the Victim's Myspace page, defendant FABOO was also clearly aware that the Victim was 16 years old. Nevertheless, FABOO pursued an on-line relationship with the Victim. After a period of time, the chats took a romantic turn. FABOO and the Victim discussed marriage and running away together. FABOO asked the Victim to discuss legal emancipation with her father. Some of the later chats discussed intimate and sexual contact. Using his computer, FABOO enticed the Victim to leave her family and travel to Oregon with him with the intention that she engage in sex with him.

FABOO's roommate, J.H., tried to dissuade FABOO from pursuing the Victim. FABOO told J.H. that he wanted to get the Victim and to take her "to the Amish" to marry her. J.H. told FABOO that if FABOO went to California to take the Victim away, FABOO would go to jail. FABOO replied that he didn't care if he went to jail. FABOO also showed J.H. a ring he bought for the Victim at Fred Meyer's.

On or about February 23, 2008, FABOO left his apartment in Oregon. Around 4 a.m. on February 24, 2008, FABOO arrived at the Victim's house in Wheatland. He was driving a white pickup truck with a camper shell on it. The Victim departed with FABOO, leaving a note behind for her parents declaring her love for FABOO.

The two drove north, crossing the border into Oregon. As they drove, the Victim had second thoughts about eloping with FABOO. She texted a boyfriend who relayed the information to authorities. FABOO made no attempt to prevent her from texting. Around this time, FABOO called J.H. and told him to watch the news that night.

FABOO was pulled over near Grant's Pass, Oregon. The Victim was in the passenger seat. Shortly thereafter, FABOO was arrested and held on state charges for custodial interference with a minor.

A search incident to arrest showed that FABOO had a bed in the back of his covered pickup truck. Under the bed was a box of chocolates. FABOO also had the wedding ring, sexual toys, and condoms with him.

FABOO knowingly enticed a 16 year old girl to travel in interstate commerce with the intention of engaging in an illegal sexual act, to wit: statutory rape, which he could be charged with in California and Oregon.